## William E. Beard, by his Next Friend and Mother, Mary E. Beard, *v.* The Reading City Passenger Railway Company, Appellant.

*Street railways—Negligence of driver—Question for jury.*

Where the evidence was conflicting and the question in the case was,— Did the driver running upon a descending grade, at the intersection of two streets, with children on each side of his car, whether on the street crossing as alleged by plaintiff or on the intersecting street as alleged by the driver, exercise care according to the circumstances? clearly such question is for the jury, under all the evidence in the case.

*Practice Superior Ct.—Assignments of Error—Refusal of nonsuit.*

No appeal lies to the refusal to grant a nonsuit.

Argued Nov. 13, 1896. Appeal, No. 115, Nov. T., 1896, by defendant, from judgment of C. P. Berks Co., June T., 1895, No. 34, on verdict for plaintiff. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Affirmed.

172     BEARD *v.* RAILWAY CO., Appellant.

Statement of Facts—Assignment of Errors. [3 Pa. Superior Ct.

Trespass for a collision. Before ENDLICH, J.

The facts appear from the opinion of the Superior Court as follows:

"The plaintiff in the court below, an infant of five years of age, by his mother and next friend, brought his action to recover damages from the defendant for personal injuries sustained by him at the intersection of North 10th street, upon which one of its cars was running northward, and Oley street which was to be crossed in the city of Reading. The child was east of the car tracks, on or near the north or far crossing. The grade was descending. The testimony as to the speed of the car was conflicting. It is admitted that the car was not stopped, although the signal to do so is alleged to have been given by the conductor to the driver. A passenger who desired to alight from the car seems to have done so at the south or near crossing, without its stoppage. Several children were standing at the intersection of North 10th and Oley streets, the one injured on the east and two others at least on the west side of the street. A passenger, who was riding on the front platform, says, "The cars were running at a lively rate." The driver says that, when the child started to run across (the street), he slacked up *much more* than when he came down the hill. The case was submitted to the jury in the court below upon the single question as to whether or not the defendant company was guilty of negligence by reason of the rate of speed at which the car was moving at the intersection of the two streets above referred to, under the circumstances. The question of contributory negligence did not in any way appear. No negligence could be imputed to a child of that age, and none was alleged on the part of the mother."

*Errors assigned* were, (1) in not affirming appellant's first point, which was as follows: "First. If the jury believe from the evidence that Mahlon Quinter, the conductor, rang the bell before arriving at Oley street, for the driver to stop at the far crossing of Oley street; that the driver was at his post with his hand on the brake and the brake at the time was partly on, owing to there being a slight down grade, and that the driver was attending to his duty; that the child when first seen by the driver was standing four or five feet east of the track, either in

the street or on the crossing; that the child then started to run across the track, either diagonally northwest, if in the street, or directly west, if on the crossing; that the child fell between the tracks, that the driver, immediately on seeing the child, pulled his lines and drew his brake as hard as he could, and actually stopped the car so that when it stopped the rear platform was in the line of Oley street, or just north of the north crossing over Oley street—there was no negligence on the part of the defendant and the verdict must be for the defendant;" (2, 3) in refusing binding instructions; (4) in overruling appellant's motion for nonsuit.

*C. H. Schœffer*, for appellant.—On the question of defendant's negligence cited: Fleischman's App., 174 Pa. 510; Railway Co. v. Connell, 88 Pa. 520; Henne v. Railway Co., 1 Pa. Superior Ct. 311; Swanson v. Crandall, 2 Pa. Superior Ct. 85.

*J. H. Jacobs*, with him *H. P. Keiser*, for appellee.—The question of negligence of defendant was properly for the jury: Railway Co. v. Foxley, 107 Pa. 537; Railroad Co. v. Horst, 110 Pa. 226.

OPINION BY BEAVER, J., December 7, 1896 (after stating the facts as above):

The only question in the case is as to whether or not the court should have submitted the question of the negligence of the defendant to the jury. This question is raised in various ways. At the close of the plaintiff's testimony, the defendant moved for a compulsory nonsuit which motion was disallowed. The action of the court in refusing the nonsuit is assigned for error. It has been many times held that no writ of error lies to the refusal to grant a nonsuit: Pownall v. Steele, 52 Pa. 446; Mobley v. Bruner, 59 Pa. 481. The fourth assignment of error is, therefore, overruled.

The sufficiency of the evidence to carry a verdict is, however, raised in the other assignments of error and they are to be disposed of upon their merits. They all cover the same ground, however, and are based upon the theory of the defendant, which it asked the court to charge as a fact, viz: that there was no evidence of negligence and that the plaintiff was, therefore, not

entitled to recover. All the defendant's points were declined. The reasons are not given. The trial judge in the court below may have refused the first of the defendant's points, because it did not fairly represent the facts of the defendant's case as presented in its own testimony, because it contained no reference to the speed at which the car was moving, which was the essential element in the case; or because the facts submitted in the point had been substantially passed upon in the general charge. Whatever the reason may have been, we think the point was properly declined.

In regard to the theory of the defendant, based upon its testimony, the court below charged the jury as follows: " The defendant, on the other hand, places the boy in the street, somewhere near the middle of Oley street, somewhat east, if I remember rightly, of the track. The witnesses called for the defense say that the boy was standing there, until the car was pretty close to him, when he suddenly started to run diagonally across the street in front of the car and so close to the car that it was impossible to stop, before striking him. Now, gentlemen, if that is the true story of this occurrence, then, inasmuch as the evidence is that the driver was at his post, with the lines in his left hand and his right hand upon the brake and the brake partly put on, and if you find the position of the boy and his actions were as contended for by the defendant, it would be impossible for me to say where any inference of negligence on the part of the driver could, under those circumstances, be drawn, even though the car may have been going at a lively rate.

" Now, gentlemen, unless you find that the car was traveling at an improper rate of speed, considering the locality, and that the occurrence was due to a consequent impossibility to control the car and stop it in time to avoid a collision, it will be very important for you to determine what was the position of the boy when first seen and what were his actions. You must look at the situation as it appeared to the driver of the car. If he saw the child standing still at a place outside of the danger line in the progress of the car, then he was not bound to expect that the child would run in front of the car. If the child was standing still, when he saw it at a place where he could safely pass with his car without hurting it, he was not bound to expect the

child to turn around and run in front of the car; but, if when the child was first seen it was about to cross the street, if the child's action gave notice to the driver of an intent on its part to go across the street, of the likelihood of getting in front of the car, if the car was not slackened, then, to be sure, it was the duty of the driver to slacken the car, if he possibly could; and, if it was impossible to do it, on account of improper rate of speed, considering the surroundings, then it might be fair for the jury to impute negligence to the defendant company." The charge throughout was clear, unbiased and adequate. It put the defendant's case quite as strongly as it was entitled to have it put and left for the consideration of the jury only the question of the speed of the car and the position of the child, both of which facts were controverted and both of which, under the direction of the court, it was necessary for the jury to find in favor of the plaintiff to justify a verdict in his favor.

The remarks of Mr. Justice DEAN, in the recent case of Evers et al. v. Philadelphia Traction Company, 176 Pa. 376, in relation to the speed of street cars at street crossings, although made in a case in which a street railway company, which operates its lines by electricity, was the defendant, are not entirely inapplicable here. He says: "Whether, under the circumstances, the motorman failed to exercise care was a pure question of fact to be determined by the jury; that the car moved rapidly between crossings was not of itself evidence of negligence, but clearly rapid movement of a car on the streets of a city requires a vigilant lookout by those in charge of it. The companies have the right to expeditiously transport passengers on the surface of the streets but that gives them no exclusive right to the surface occupied by their tracks. Neither at crossings nor between them is the public right relinquished. It is only subordinated to that of the railway company. The fact that more caution should be exercised in running over crossings than on the street between them warrants no inference that the car can be run without caution, except on street crossings. In the one case, rapid running is of itself evidence of negligence; in the other it is not."

The question in this case was, Did the driver running upon a descending grade, at the intersection of two streets, with children on each side of his car, whether on the street crossing as alleged by the plaintiff or on the intersecting street, as alleged

by the driver, exercise care, according to the circumstances? This was clearly a question for the jury, under all the evidence in the case, and was fully and fairly presented to them for their finding in the charge of the trial judge in the court below. All the assignments of error are, therefore, overruled and the judgment is affirmed.